FILED
2017 Feb-28  PM 12:44
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM J. STOKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15-cv-0842-JEO |
| | ) | |
| SECURITY ENGINEERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

In this action, Plaintiff William J. Stokes claims that Defendant Security

Engineers, Inc. ("SEI") terminated his employment because of age, in violation of

the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621

*et seq.* (Doc.[1] 1).  The parties have consented to an exercise of plenary jurisdiction

by a magistrate judge under 28 U.S.C. § 636(c).  (Doc. 13).  The cause now comes

to be heard on SEI's respective motions for summary judgment (doc. 24) and to

strike the declaration of a non-party that Stokes has submitted in opposition to

SEI's motion for summary judgment (doc. 34).  Upon consideration, the court

---

[1]References to "Doc(s). ___" are to the document number(s) of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of the Court.  Pinpoint citations to deposition and hearing testimony are to the page of the reporter's transcript.  Such citations to declaration or affidavit testimony are to the paragraph number of the document.  Unless otherwise noted, pinpoint citations to other evidentiary materials are to the page of the electronically filed document in the court's CM/ECF system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

concludes that SEI's motion for summary judgment is due to be granted and that its motion to strike is moot.

## I.      SUMMARY JUDGMENT REVIEW STANDARDS

Pursuant to Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, a defendant is authorized to move for summary judgment on claims asserted against it.  Under that rule, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. PROC. 56(a).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show there is a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. PROC. 56(c)(1)(A), (B).  In its review of the evidence, a court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).  At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## II.    BACKGROUND[2]

SEI provides private physical security services for clients throughout the southeastern United States.  SEI hired Stokes as a Security Officer in November 2000.  He worked for the company until being terminated in January 2015, at which time he was 62 years old.  (*See* Doc. 31-2 at 8-12, Declaration of Plaintiff William Stokes ("Pl. Decl.") ¶ 1).

Stokes's final assignment with SEI was at BBVA Compass Bank, in the Daniel Building in downtown Birmingham, Alabama.  When he was fired, he had

---

[2]The summary set forth in this section is gleaned from the court's review of the pleadings and evidentiary materials submitted by the parties in connection with the motion for summary judgment.  The facts are stated in light of the applicable review standards on a such a motion, which generally requires the court to credit the evidence of the non-movant.  Accordingly, these represent the facts only for purposes of the present motions pending before the court; they may not be the actual facts.

been stationed there the preceding eleven years, without having suffered any prior material disciplinary action.  Stokes worked Monday through Friday as the shift supervisor on the second shift, which ran from 3 p.m. to 11 p.m.  While he reported directly to the site supervisor, the individual in that position usually worked on the first shift, from 7 a.m. to 3 p.m.  So when Stokes was working, he was generally SEI's only supervisor on site, responsible for the four or five security officers working on the second shift.  (*See* Pl. Decl. ¶ 2).

The episode precipitating Stokes's discharge occurred on the evening of Friday, January 16, 2015.  On that date, Stokes was scheduled to take his allotted 30-minute meal break at approximately 6 p.m.  Throughout his tenure at the Daniel Building, he and other supervisory employees regularly left the site on meal breaks to get food for themselves and the other officers and to run brief errands.  Stokes also claims to have been unaware of any SEI rule or policy forbidding the practice.  Accordingly, sometime after 6 o'clock, Stokes left the Daniel Building on his meal break and drove approximately seven blocks to an Alabama Alcoholic Beverage Control store (the "ABC store") to purchase a bottle of vodka so that he and his wife could make martinis when he went home after his shift.  Inside the ABC store, Stokes encountered Devon Wells, another SEI security officer, who was in his late 20s or early 30s.  Wells had previously

4

worked at the Daniel Building under Stokes's supervision, but he had since been

transferred to another BBVA Compass Bank branch on the west side of town.

Wells's timesheet for that night reveals that he had ended his shift and signed out

at 6:27 p.m. (doc. 26-7), although when he went to the ABC store, he, like Stokes,

was still in his SEI uniform.  Stokes approached Wells and tapped him on the

shoulder.  (Doc. 26-13 at 3).  According to Stokes, Wells responded by raising his

jacket, revealing his pistol, and Wells put his hand on it, although he did not

remove it from its holster.  (*Id.*)  Stokes says that he cautioned Wells against

"horse playing" with his weapon.  (*Id.* at 2-3).  After purchasing a bottle of vodka

and conversing briefly with Wells, Stokes exited the store and put the bottle in the

trunk of his car.  He then drove back to the Daniel Building, parked, leaving the

vodka in the trunk, and returned to his work duties before the end of his meal

break.  Stokes estimates that his trip to the ABC store and back took about

seventeen minutes.  (Doc. 26-2, Deposition of Plaintiff William Stokes ("Pl.

Dep.") at 95).  He then completed his shift without incident.

Unbeknownst to Stokes, however, soon after he and Wells had parted ways,

Wells had called SEI and reported to dispatcher Paul Lockett that he had just seen

Stokes buying alcohol at an ABC store while on duty.  (Doc. 26-6; Deposition of

Joel Morris ("Morris Dep.") at 38-39).  Lockett, in turn, called the home of SEI's

Assistant Vice President and Director of Operations, Joel Morris, relaying the information he had received from Wells. (*Id.*; Morris Dep. at 38-39). Morris subsequently contacted Wells, who confirmed seeing Stokes buy alcohol in a package store while on duty. (Morris Dep. at 40-41, 67).

Within a day of speaking to Wells, Morris contacted Stokes's immediate superior, the site supervisor for the Daniel Building, William Webb. (*Id*. at 42-43). Notwithstanding Stokes's claim that SEI employees often left the Daniel Building during meal breaks and that he was unaware of any rule against doing so, it is undisputed that SEI's written "Security Post Instructions" for the site did, in fact, contain such a prohibition. Specifically, the Security Post Instructions expressly stipulated both that breaks for security officers were "to be taken in designated break areas" and that 30-minute meal breaks "must be taken ... onsite." (Doc. 26-5 at 17, ¶¶ 6.1, 6.1.2). In light of those directives, Morris asked Webb whether it was understood by the employees on site that they were not allowed to leave for breaks. (Morris Dep. at 42). Webb confirmed that to be the case, further telling Morris that he, Webb, had posted a memorandum specifically instructing that employees were required to remain on site for breaks. (*Id.* at 43-45).

The following week, Stokes worked his next scheduled shift or two. However, on Tuesday or Wednesday of that week, January 20th or 21st, 2015, he

received a call at home from a secretary in SEI's corporate office in Birmingham. (Pl. Dep. at 106-07; Doc. 26-13 at 2). She told Stokes not to report for his next shift because Morris had terminated his employment. (Pl. Decl. ¶ 5; Doc. 26-13 at 2). Stokes immediately asked to speak with Morris. (Pl. Decl. ¶ 6; Doc. 26-13 at 2). According to Stokes, Morris came to the phone and told Stokes he had been terminated because he had been seen at the ABC store while in uniform. (Pl. Decl. ¶¶ 5-6; Doc. 26-13 at 2; *see also* Pl. Dep. at 107-08). Stokes did not deny the allegation, but he told Morris he had seen another SEI employee, namely, Wells, in the store in uniform too, prompting Stokes to ask if Wells was going to be fired as well. (Pl. Decl. ¶ 7; Doc. 26-13 at 2). Morris acknowledged being aware that Wells had been present in the store, but Morris said that Wells was not being terminated because he had been off duty at the time. (Pl. Decl. ¶ 7; Doc. 26-13; Morris Dep. at 79-80).

On Friday, January 23, 2015, Stokes had a meeting with Morris and SEI's Director of Human Resources. (Pl. Decl. ¶ 8; Pl. Dep. at 113; Doc. 26-13 at 2; Morris Dep. at 80-81). Stokes claims that, at that meeting, Morris "changed" the explanation for the discharge, "from being seen at the ABC store in uniform to abandoning [his] post." (Pl. Decl. ¶ 8; *see also* Doc. 26-13 at 2; Pl. Dep. 107-08). Stokes denied that he had abandoned his post, insisting that he had only been gone

during his meal break, that he had returned before it was over, and that he had arranged for another employee to cover for him while he was gone.  He says he also made it known he believed he was being treated unfairly insofar as Wells was not fired despite not only having been in the ABC Store in uniform as well but also playing with his work firearm while there.  (Doc. 26-13 at 2; *see also* Morris Dep. at 55-56, 80-81).  Stokes further proffered that Wells had often been treated leniently because his father worked in SEI's corporate office as the dispatch supervisor.  (Doc. 26-13 at 2).  Following Stokes's termination, SEI replaced him with a 37-year old employee who was transferred to the Daniel Building from another Compass Bank branch.  (Doc. 26-14 at 8).

Stokes subsequently filed an administrative claim for unemployment compensation benefits with the Alabama Department of Labor ("DOL").  SEI challenged the claim.  An examiner with the DOL initially found in Stokes's favor.  (*See* Doc. 31-2; Doc. 26-12 at 2-14, Transcript of Hearing before DOL Board of Appeals ("BOA Hrg.") at 4).  SEI appealed to an administrative hearing officer who reversed, finding that Stokes was partially disqualified from receiving benefits pursuant to ALA. CODE § 25-4-78(3)(c), because he had been discharged for misconduct connected with work.  Stokes, in turn, appealed to the DOL's State Board of Appeals ("BOA"), which held an evidentiary hearing.  (Doc. 26-10;

8

BOA Hrg. at 2-5). The BOA issued a decision summarily upholding the hearing officer's ruling, thereby affirming that Stokes was partially disqualified from receiving unemployment compensation benefits, for a period of eight weeks. (Doc. 26-11).

Meanwhile, Stokes had also filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that SEI had violated federal law by terminating his employment because of age. (Doc. 1-1 at 2). After the EEOC issued a right-to-sue notice (*id.* at 4-5), Stokes, through counsel, timely filed this action. In it, he raises a single claim: that his termination was the product of age discrimination prohibited by the ADEA. (Doc. 1). SEI has now moved for summary judgment. (Doc. 24). In support, SEI raises several arguments, to the effect that Stokes's ADEA discharge claim: (1) is barred by collateral estoppel, based upon the disposition of his administrative claim for unemployment compensation benefits; (2) fails on the merits because he cannot present substantial evidence that SEI's proffered reasons for firing him were a pretext for age discrimination; and (3) fails because he cannot pursue a "mixed motives" theory of liability under the ADEA. (*See id.* at 1-2). The parties have fully briefed that motion (*see* Docs. 25, 31, 35), and they have filed evidence in support of their respective positions. (Docs. 26, 31-1, 31-2).

9

## III.   DISCUSSION

### A.   Collateral Estoppel

Stokes claims that SEI is liable under the ADEA, a federal law that prohibits an employer from discharging an employee who is between 40 and 70 years old because of age.  *See* 29 U.S.C. §§ 623(a)(1); 631(a); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000).  SEI first argues that it is entitled to summary judgment on the theory that Stokes's ADEA claim is barred by the doctrine of collateral estoppel, also known as issue preclusion.  Where applicable, collateral estoppel prevents relitigation of issues decided in an earlier proceeding. *See Mitchell v. Humana Hosp.-Shoals*, 942 F.2d 1581, 1582-83 (11th Cir. 1991). Specifically, SEI contends that Stokes's ADEA claim is barred by the BOA's decision in the administrative proceedings by which he sought unemployment compensation benefits, to the effect that he was terminated for misconduct in connection with work under ALA. CODE § 25-4-78(3)(c).  The court disagrees.

Both the Supreme Court and the Eleventh Circuit have recognized that state agency administrative findings not subjected to judicial review have no preclusive effect on a subsequent suit raising claims under the ADEA suit or the similar provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., which prohibit employment discrimination because of race, national

origin, sex, and religion. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501
U.S. 104, 110-114 (1991); *University of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986);
*Bishop v. City of Birmingham Police Dep't*, 361 F.3d 607, 610 (11th Cir. 2004);
*Crapp v. City of Miami Beach*, 242 F.3d 1017, 1021-22 (11th Cir. 2001); *Degado
v. Lockheed-Ga. Co., a Div. of Lockheed Corp.*, 815 F.2d 641, 646-47 (11th Cir.
1987).  It is undisputed that the BOA's findings in the administrative proceedings
on Stokes's application for unemployment compensation benefits were not
judicially reviewed.  As such, they can have no preclusive effect in this ADEA
action. *See Astoria Fed.*, 501 U.S. at 110-14; *Crapp*, 242 F.3d at 1021-22;
*Delgado*, 815 F.2d at 646-47; *Howard v. Steris Corp.*, 886 F. Supp. 2d 1279, 1290
(M.D. Ala. 2012), *aff'd*, 550 F. App'x 748 (11th Cir. 2013); *Milner v. Lee Cty.,
Ala.*, 2006 WL 1361147, at *6 (M.D. Ala. May 16, 2006).  SEI is not entitled to
summary judgment based on collateral estoppel.[3]

## B.      Sufficiency of the Evidence to Prove Age Discrimination

In addition to the above procedural gambit, SEI contends that it is entitled to
summary judgment on the ground that Stokes cannot present substantial evidence

---

[3]Despite the binding authorities referenced in the text, SEI continues to insist that
collateral estoppel may apply to unreviewed state agency administrative findings in a subsequent
suit brought under the ADEA. (*See* Doc. 35 at 4-8).  Conspicuously absent from SEI's briefing,
however, is a citation to even a single judicial decision actually so holding, as it relates to claims
under the ADEA or Title VII. (*See id.*; Doc. 25 at 11-13).

proving that he was fired because of his age.  Because Stokes's ADEA claim is

founded upon circumstantial evidence of age discrimination, it is subject to the

familiar burden-shifting framework first articulated by the Supreme Court in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for use in Title VII

actions.  *See Trask v. Secretary, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191

(11th Cir. 2016).  The Eleventh Circuit has briefly summarized that three-step

approach as follows:

> Under the *McDonnell Douglas* framework, a plaintiff must first
> create an inference of discrimination through her prima facie case.
> *Vessels* [*v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005)]
> "Once the plaintiff has made a prima facie case, a rebuttable
> presumption arises that the employer has acted illegally."  *Alvarez v.
> Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).
> "The employer can rebut that presumption by articulating one or more
> legitimate non-discriminatory reasons for its action."  *Id.*  "If it does
> so, the burden shifts back to the plaintiff to produce evidence that the
> employer's proffered reasons are a pretext for discrimination."  *Id.*

*Trask*, 822 F.3d at 1191.

Although the *McDonnell Douglas* analysis typically starts with an

examination of whether the plaintiff can make out a prima facie case of

discrimination, SEI's motion does not contest Stokes' ability to do so.  Rather, SEI

proceeds directly to the second step, by asserting that it terminated Stokes's

employment for non-discriminatory reasons.  SEI then posits that it is entitled to

12

summary judgment on the theory that Stokes cannot present substantial evidence of pretext.  (*See* Doc. 25 at 13-16).  Because SEI does not contest the prima facie case, the court will presume its existence for purposes of summary judgment[4] and proceed immediately to the second step of the *McDonnell Douglas* analysis.  *See Bass v. Board of Cty. Comm'rs, Orange Cty., Fla.*, 256 F.3d 1095, 1104 (11th Cir. 2001), *overruled in part on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008); *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 964 (11th Cir. 1997); *see also Imaging Business Machines, LLC v. BancTec, Inc.*, 459 F.3d 1186, 1191 (11th Cir. 2006) (recognizing that, absent notice and an opportunity to be heard, a court may not grant summary judgment against a plaintiff based on the insufficiency of evidence to establish an element of his claim that has not been

---

[4]Indeed, it appears that the evidence, viewed in the light most favorable to Stokes, does establish a prima facie case in any event.  An ADEA plaintiff can establish a prima facie case of discriminatory discharge by proof of the following: (1) he was between the ages of 40 and 70; (2) he was discharged; (3) he was qualified for his position; and (4) he was replaced by someone "substantially younger."  *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015); *Kragor v. Takeda Pharm. Amer., Inc.*, 702 F.3d 1304, 1309 (11th Cir. 2012); *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310-13 (1996).  Stokes clearly satisfies the first and second elements based on evidence that he was fired when he was 62 years old.  He also meets the "substantially-younger-replacement" element, insofar as SEI admits it replaced Stokes with a worker about 25 years Stokes's junior.  *See Liebman*, 808 F.3d at 1299.  Finally, the evidence also indicates that Stokes had been in his position without incident for approximately eleven years at the time of his termination, which raises an inference that he was qualified for purposes of a prima facie case.  *See id.*; *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999); *Alvarez*, 610 F.3d at 1265; *Crapp*, 242 F.3d at 1020; *Vessels*, 408 F.3d at 769; *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 643 (11th Cir. 1998).

challenged by the defendant's Rule 56 motion).  At that stage, the employer must

"produce some 'legitimate, nondiscriminatory reason' for the adverse employment

decision."  *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir.

1995) (*quoting Texas Dep't of Community of Affairs v. Burdine*, 450 U.S. 248, 254

(1981)).  "Because the defendant need only produce, not prove, a

nondiscriminatory reason, this burden is 'exceedingly light.'"  *Id.* (*quoting*

*Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983)).

There is no dispute that Morris made the decision to terminate Stokes's

employment.  Morris states that he did so based on his determination that Stokes

had (1) "abandoned his post," (2) "possessed alcohol while on duty" and (3) "was

insubordinate."  (Doc. 25 at 13, citing Doc. 26-14 at 4-6; *see also* Morris Dep. at

63-67).  Specifically, Morris claims that he found that, by leaving the Daniel

Building and purchasing the bottle of vodka, Stokes had abandoned his post and

possessed alcohol while on duty, both of which are violations of SEI rules.  Morris

further explains he also deemed Stokes's act of leaving the Daniel Building to be

"insubordinate," because he believed Stokes was aware he was not permitted to

leave the site at any time during his shift, including on meal breaks.  Morris says

he reached that conclusion based on the written express prohibition contained in

the Security Post Instructions and his conversation with Stokes's site supervisor,

14

Webb, who told Morris he had recently posted a memo reminding employees that all meal breaks had to be taken on site.  Stokes does not dispute that such evidence satisfies SEI's light burden to articulate lawful reasons for his discharge.  Thus, the only remaining question is whether the record contains evidence from which a jury might reasonably infer that SEI's proffered reasons are a pretext for age discrimination.  As explained below, the court concludes that Stokes cannot do so, and SEI is therefore entitled to summary judgment in its favor.

A plaintiff may establish pretext in one of two ways.  He may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the [defendant's] proffered explanation is unworthy of credence."  *Burdine*, 450 U.S. at 256.  "In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Kragor v. Takeda Pharm. Amer., Inc.*, 702 F.3d 1304, 1308-09 (11th Cir. 2012) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).  The Supreme Court has recognized that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the

trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530

U.S. 147-48.  Nevertheless, a plaintiff cannot prevail unless he proves to the jury's

satisfaction that unlawful discrimination was the real reason for the employer's

action, not merely that the employer's asserted explanation is false.  *St. Mary's*

*Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  Thus, there may also be cases in

which "the plaintiff has established a prima facie case and set forth sufficient

evidence to reject the defendant's explanation" and the employer is still entitled to

summary judgment because "no rational factfinder could conclude that the action

was discriminatory." *Reeves*, 530 U.S. at 148.  "For instance, an employer would

be entitled to judgment as a matter of law if the record conclusively revealed some

other, nondiscriminatory reason for the employer's decision, or if the plaintiff

created only a weak issue of fact as to whether the employer's reason was untrue

and there was abundant and uncontroverted independent evidence that no

discrimination had occurred." *Id.*

Much of Stokes's claim of pretext is based the testimony of himself and his

former SEI supervisor, Charlie Hill, offered to support the proposition that he,

Stokes, did not actually violate SEI work rules.  Stokes does not deny that, on the

night in question, he left the site on his meal break in the middle of his shift and

purchased a bottle of vodka at the ABC store.  However, Stokes asserts that SEI

supervisors like himself had always been permitted to leave the Daniel Building

during meal breaks, so long as they arranged for someone to cover for them while

they were gone and they returned before the end of the scheduled break.  That

claim is generally supported by Hill, the Daniel Building site supervisor and

Stokes's immediate superior from 2009 until April 2014.  (*See* Doc. 31-2 at 2-6,

Declaration of Charlie Hill ("Hill Decl.")[5] ¶¶ 3, 5-8).  It is also consistent with the

testimony of Brian Gunn, an SEI security officer who worked under Stokes at the

Daniel Building.  Specifically, Gunn testified at the administrative hearing on

Stokes's claim for unemployment benefits, to the effect that supervisors regularly

left the site on meal breaks; that, on the night in question, he had agreed to cover

Stokes's duties while went to the ABC store; and that he was unaware of any SEI

rule against such practice.  (*See* Doc. 26-12 at 2-14, DOL Board of Appeal

Hearing Transcript ("BOA Hrg. Trans.") at 19-20, 29, 34-35).  Stokes also insists

that, although he left the site, he did not "abandon his post," because he

understood that to mean leaving work *and failing to return before the end of your*

---

[5]SEI has moved to strike Hill's declaration on the grounds that it fails to comply with FED. R. CIV. P. 56(e), on the theory that his testimony therein, at least in part, (1) is not shown to have been made on personal knowledge, (2) is inadmissible hearsay, (3) contains "improper opinions"; and (4) contains a host of irrelevant facts.  (Doc. 34).  Stokes has filed a brief in opposition to the motion to strike.  (Doc. 37).  However, because the court concludes that SEI is entitled to summary judgment even if Hill's declaration testimony is considered for what it is worth, SEI's motion to strike is moot.  *See Russell v. City of Tampa*, 652 F. App'x 765, 766 n. 1 (11th Cir. 2016); *Shaw v. Hospital Auth. of Cobb Cty.*, 614 F.2d 946, 952 (5th Cir. 1980).

*scheduled shift*, whereas he did come back after his meal break and completed the rest of his shift.  He also seems to maintain he did not violate any work rule against possession of alcohol while on duty because he left the bottle of vodka he purchased at the ABC store in the trunk of his car upon returning to work.

The fundamental problem with all of the above arguments is that a plaintiff cannot prove pretext by litigating the issue of whether the he was, in fact, a "good employee[ ]." *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002).  "Put frankly, employers are free to fire their employees for 'a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)).  The pretext analysis focuses upon whether the employer has given an honest account of its behavior or has instead used proffered lawful reasons as cover for discriminating against the plaintiff on the basis of his age.  *Alvarez*, 610 F.3d at 1266.  As such, the "inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."  *Id.* (*citing Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997)).  And as the Eleventh Circuit has recently reiterated,

18

> [federal anti-discrimination statutes do] not allow federal courts to
> second-guess nondiscriminatory business judgments, nor does it
> replace employers' notions about fair dealing in the workplace with
> that of judges.  We are not a "super-personnel department" assessing
> the prudence of routine employment decisions, "no matter how
> medieval," "high-handed," or "mistaken."  *Alvarez*[, 610 F.3d at
> 1266] (quotation marks, citations, and alterations omitted).

*Flowers*, 803 F.3d at 1338.

Stokes may believe he did not violate a work rule.  That same opinion might also be shared by Hill, Gunn, and other SEI employees who worked with Stokes at the Daniel Building.  It is also safe to assume that Stokes considers his termination to have been unfair given his lack of prior material discipline or any warnings, as well as what he says were the actual practices long observed at the site.  Indeed, a jury (and even this court) might well agree that SEI's decision to terminate him appears to have been quite heavy-handed.  However, that is not the issue.  Instead, what matters is: (1) whether *Morris*, who all agree made the decision to fire Stokes, acted out of an honest belief that Stokes engaged in misconduct, even if such belief rested on a mistaken understanding of the facts or a draconian interpretation of SEI's rules, *see Alvarez, supra*; and (2) whether, "but for" consideration of age, Stokes would have been retained.  *See Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177-78 (2009) (holding that an ADEA plaintiff bears the burden to show that age was the "but-for" cause of the

19

employer's disparate treatment)[6]; *see also McDonald v. Santa Fe Trail Transp.*

---

[6]SEI has argued that it is entitled to summary judgment under the Supreme Court's decision in *Gross* because Stokes testified at his deposition that he believed Wells received more favorable treatment than Stokes did because of *nepotism*, rather than age. (Doc. 25 at 16). In support, SEI observes that *Gross* holds that an ADEA plaintiff bears the burden to establish that age was the but-for cause of an adverse employment action. From there, SEI leaps to the conclusion that, if an ADEA plaintiff claims or testifies to a belief that some reason other than age played a role in the employer's decision, he is thereby precluded him from establishing the necessary but-for nexus as to age. United States District Judge William M. Acker has taken a similar position. *See, e.g., Hendon v. Kamtek, Inc.*, 117 F. Supp. 3d 1325, 1331 (N.D. Ala. 2015); *Culver v. Birmingham Bd. of Educ.*, 646 F. Supp. 2d 1270, 1271-72 (N.D. Ala. 2009); *Dawson v. Wal-Mart Stores East, LP*, 160 F. Supp. 3d 1303, 1304-05 (N.D. Ala. 2016). However, those decisions are not binding, *see Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991), and the undersigned has previously rejected Judge Acker's view of *Gross* as unpersuasive. *See Howell v. Morrison Mgmt. Specialists, Inc.*, 2013 WL 6568935 (N.D. Ala. Dec. 13, 2013). Indeed, the Eleventh Circuit has recently done likewise, albeit in a non-binding opinion, insofar as Judge Acker ruled that *Gross* precluded a plaintiff from simultaneously pleading that an adverse employment action was motivated by age and race. *Savage v. Secure First Credit Union*, No. 15-12704, 2016 WL 2997171, at *1 (11th Cir. May 25, 2016), *reversing* 107 F. Supp. 3d 1212 (N.D. Ala. 2015).

SEI's instant position is likewise unsound. SEI seems to interpret *Gross* as meaning that ADEA plaintiffs now automatically lose anytime there is evidence of "mixed motives" underlying an adverse action. However, that is manifestly wrong; what *Gross* holds, indeed, expressly, is that, even in cases that may involve "mixed motives," the burden remains at all times on the plaintiff to prove that age is the "but-for" cause of the decision. *See* 557 U.S. at 177-78. Relatedly, SEI seems to assume that a "but-for" standard requires proof that a prohibited characteristic was the "sole" reason for the employer's decision, which is also wrong. *See id.* at *6; *McDonald*, 427 U.S. at 283 n. 10; *Nely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1076 (11th Cir. 1996); *McQueen v. Wells Fargo Home Mortg.*, 955 F. Supp. 2d 1256, 1283 (N.D. Ala. 2013), *aff'd*, 573 F. App'x 836 (11th Cir. 2014); *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013); *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010). Finally, SEI is mistaken to suggest that a plaintiff's testimony with respect to his beliefs about the employer's motives might amount to a species of admission barring him from pursuit a discrimination claim requiring proof of but-for causation related to consideration of a different characteristic. Again, what matters in employment discrimination cases is the knowledge, beliefs, and motives of the employer, not the plaintiff. *Alvarez*, 610 F.3d at 1266. So just as a plaintiff cannot prove that the employer unlawfully discriminated by testifying he believes it to have occurred, nor can his testimony about other motives foreclose the possibility that he might otherwise present evidence establishing that the employer discriminated on some other, legally prohibited ground.

*Co.*, 427 U.S. 273, 281-84 (1976) (recognizing that, while the employer could generally refuse to rehire former employees found to have stolen cargo, the employer would violate Title VII if it discriminated on the basis of race in its rehiring decisions relative to those who engaged in such misconduct, even if it was criminal).

Again, Morris testified he fired Stokes based on his belief that, by leaving the Daniel Building on his meal break and purchasing a bottle of vodka, Stokes violated SEI's work rules prohibiting abandoning one's post, possessing alcohol on duty, and insubordination. Morris explained that such belief was based on his review of SEI's written policies, which, whether Stokes had seen them or not, undisputedly and expressly provided that employees at the Daniel Building had to take meal breaks on site and prohibited alcohol possession while on duty. Morris also says that his belief was also formed in light of his communications with both Wells, who reported seeing Stokes buy alcohol while on duty, and Stokes's current supervisor, Webb, who confirmed to Morris that he had made employees at the Daniel Building aware that they had to remain on site for meal breaks. In the face of that evidence, testimony by Stokes, Hill, and Gunn directed to their own knowledge and beliefs regarding what was *de facto* permitted at the Daniel Building fails to materially push the needle as it relates to rebutting Morris's

21

testimony regarding his knowledge, good-faith beliefs, and motives.

Stokes also attempts to prove pretext based on evidence that a younger employee, Wells, was not fired despite having allegedly engaged in similar misconduct. Such evidence of disparate treatment may indeed be powerful evidence of pretext and unlawful discriminatory animus. *See McDonnell Douglas*, 411 U.S. at 804; *Corley v. Jackson Police Dep't*, 566 F.2d 994, 998-99 (5th Cir. 1978)[7]. However, the Eleventh Circuit has recognized in this context that the misconduct of the plaintiff and the would-be comparator must be "nearly identical" to prevent courts from second-guessing the employer's legitimate business decisions. *See Flowers*, 803 F.3d at 1340; *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001); *Maniccia v. Brown*, 171 F.3d 1364, 1368–69 (11th Cir. 1999).

Stokes asserts that Wells is a valid comparator because he, like Stokes, was in the ABC store "in uniform," so "the only difference" between them, Stokes says, is their respective ages. (Doc. 31 at 18). This argument can be quickly dispatched. While Wells is substantially younger than Stokes, their relevant conduct is not at all similar, never mind "nearly identical." Both Stokes and Wells

---

[7]The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

were in the ABC store in uniform, but there is no genuine dispute that Stokes was

then on duty while Wells had finished his shift and clocked out.  Thus, as Morris

explained, unlike Stokes, Wells's being in the store was not a violation of SEI

policy at all, irrespective of whether he was wearing his uniform.  In effect, Stokes

is attempting to recast SEI's explanation for the discharge decision from one based

on Stokes's having left the Daniel Building while on duty and purchasing alcohol

to one based narrowly and strictly upon his being in the ABC store while in

uniform.  This he may not do.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079,

1088 (11th Cir. 2004) ("If the proffered reason is one that might motivate a

reasonable employer, a plaintiff cannot recast the reason but must meet it head on

and rebut it.").

Stokes next argues that SEI has given inconsistent explanations and shifting

reasons for terminating his employment.  Such may also be evidence of pretext.

*See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir.

2004); *Bechtel Constr. Co. v. Secretary of Labor*, 50 F.3d 926, 935 (11th Cir.

1995); *Howard v. BP Oil Co.*, 32 F.3d 520, 525-26 (11th Cir. 1994).  On this front,

Stokes says that, on the day he found out he was fired, January 20th or 21st, he

spoke on the phone with Morris, who first told him he had been terminated

"because [he] had been seen at the ABC store while in uniform."  (Pl. Decl. ¶¶ 4-

23

5).  However, when Stokes responded by telling Morris that he had seen Wells in

uniform in the store as well and asking if he was going to be fired, Morris replied

that Wells's situation was different because he, unlike Stokes, had not been "on

duty."  Those statements are not substantially inconsistent so as to suggest any

dissembling on Morris's part.  It is true that "being in uniform" and "being on

duty" are not strictly synonymous, as illustrated by the cases of Stokes and Wells

themselves.  But in this context, the two phrases are very closely associated in

meaning, insofar as SEI employees like Stokes are always supposed to be "in

uniform" while "on duty."  As such, the fact that Stokes initially verbalized his

concern as Stokes being in the ABC store "in uniform" but clarified during the

same conversation that the transgression was actually his having been there while

"on duty" is far too slender a reed upon which to support a claim that such

statements are material evidence of pretext.  *See Tidwell v. Carter Prods.*, 135

F.3d 1422, 1428 (11th Cir. 1998) (stating that the existence of a possible

additional non-discriminatory basis for termination does not prove pretext);

*Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998) (finding

that the back-dating forms was not enough to show pretext under the

circumstances); *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1377 (11th Cir.

1996) (finding that there is nothing inconsistent between the written reason and

24

the more specific, detailed reasons justifying the termination).

Stokes also says that two or three days after that phone call, on January 23rd, he had a meeting with Morris and SEI's Human Resources Director, at which time, Stokes says, Morris "changed" the reason for his discharge to "abandoning [his] post." (*Id.*; Pl. Decl. ¶ 8; Pl. Dep. at 107-08). But insofar as Morris had already indicated to Stokes on the phone call that his termination arose from his having gone to the ABC store while "on duty," as explained above, for Morris then to have charged that Stokes had "abandoned his post" amounts to little more than a re-characterization of the same misconduct. That is, a common understanding of the word "abandon" is "to give up to the control or influence of another person or agent," Merriam-Webster's Collegiate Dictionary 1 (10th ed. 2002), and it is undisputed that, to have gone to the ABC store while "on duty," Stokes would have "given up control" of his "post" at the Daniel Building, at least during the period of his absence. Thus, contrary to Stokes's assertion, the evidence does not reasonably show that Morris materially "changed" his explanation at the human resources meeting. *See Standard; Mayfield, supra.*

Stokes also claims that SEI has given inconsistent explanations based on a notice he received from the Alabama DOL, advising that SEI had filed an administrative appeal in Stokes's unemployment compensation case. (Doc. 31-2

at 14).  That notice, dated February 23, 2015, states in relevant part that the "basis for the appeal [by SEI] appears to be: that you [Stokes] were discharged after warning for failing to ask for relief for a break and leaving your post unattended." (*Id.*)  Stokes emphasizes that such explanation differs from SEI's current one because SEI has never otherwise suggested that he was given any pre-termination "warning" nor that he was guilty of "failing ask for relief for a break" before he left the site.  Stokes also highlights that the appeal notice says nothing about possessing alcohol at work.  Indeed, SEI's Morris essentially concedes that the DOL notice is neither complete nor fully correct to the extent it was intended to convey the basis for his decision to fire Stokes.  (*See* Morris Dep. at 91-95, 109-112).

Nevertheless, the DOL appeal notice also has little to no probative value on the issue of pretext.  For starters, the notice was created by the DOL, not SEI, nor is there any indication that SEI ever approved it.  Stokes asserts that it is implicit that SEI must have provided the DOL with the explanation set forth in the notice. However, the decisionmaker, Morris, denies having provided the DOL with any such information or explanation, and Stokes offers nothing to rebut that.  Even assuming someone else at SEI might have communicated information about Morris's decision, that still could not prove much.  *Cf. Steger v. General Elec. Co.*,

26

318 F.3d 1066, 1079 (11th Cir. 2003) (an employee cannot satisfy his burden to come forward with evidence of discrimination or pretext with statements by nondecisionmakers).  Also, while the DOL notice undisputedly has some of the details wrong, its core allegation, that Stokes was fired for an episode in which he left his post, is not inconsistent with SEI's explanation that he was discharged for leaving the Daniel Building while on duty to purchase alcohol.  Moreover, even assuming the DOL notice might be viewed as suggesting an inconsistent or incomplete explanation, there is simply no evidence in the record with respect to who at the DOL created the notice or how they determined what the "basis for" SEI's appeal "appear[ed] to be."  It is reasonable to assume that the DOL looked at *something* in drafting the appeal notice language.  But without knowing what that "something" was, one cannot reasonably infer from the notice alone that SEI provided any materially inconsistent explanation to the DOL.

Stokes also argues that, while SEI now claims that he was also fired for possessing alcohol while on duty, he was never given that specific reason for his discharge.  (Pl. Decl. ¶ 9).  Rather, he claims SEI was told only about being in the ABC store in uniform and leaving his post while on duty.  He further maintains that SEI did not raise the issue of alcohol possession until its interrogatory responses during this litigation.  The Eleventh Circuit has recognized, however,

27

that evidence that the employer may have harbored "an additional, but undisclosed, [non-discriminatory] reason for the decision ... does not prove pretext." *Tidwell*, 135 F.3d at 1428.  Here, accepting Stokes's claim that SEI did not specifically assert that his purchase, and therefore "possession," of alcohol while on duty motivated his discharge, it remains undisputed that the entire focus of his discussions with Morris regarding his termination was that he had left the Daniel Building and gone to a *liquor store* while on duty.  The record also belies Stokes's assertion that SEI only raised possession of alcohol as a reason during this litigation.  In particular, SEI has provided a copy of a "Human Resources Action Report," dated January 26, 2015, less than a week after Stokes's termination, containing an "explanation" for the termination that specifically included an allegation that Stokes was guilty of "possessing alcohol ...while on duty," in addition to "insubordination," and "improper conduct/activity while on duty." (Doc. 26-9).  And all of those charges, the document indicates, derived from the same allegations that have always been at the core of this case: that "Stokes abandoned his post and was observed at the ABC Beverage store on 7th Avenue South purchasing alcohol" while still on his scheduled shift.  (*Id.*)  The court concludes that Stokes has failed to present sufficient evidence of pretext based on SEI's purportedly shifting or inconsistent explanations.

28

Finally, Stokes offers he can establish pretext based upon proof that SEI "regularly terminated workers over 50 for trivial reasons." (Doc. 31 at 18). Such evidence may at times be relevant and admissible to show discriminatory intent and pretext. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1285 (11th Cir. 2008); *Damon*, 196 F.3d at 1361. Here, Stokes refers the court to EEOC charges filed by four SEI employees in Birmingham who claimed to have been subjected to age discrimination at various times between 2012 and 2016. (*See* Doc. 31-2 at 16-23). However, only two of the charges mention Morris at all, neither of those involved a claim of wrongful discharge, and one of those employees was over age 70 and was therefore outside the class protected by ADEA. Nor do any the charges assert that Morris or any other SEI employee made remarks exhibiting a bias against older workers. Ultimately, the court concludes that the EEOC charges do not shed any material light on Morris's decision to terminate Stokes in this case, for conduct the substance of which he admits to have engaged, so the charges do not constitute significant evidence of pretext. *See Jackson v. United Parcel Serv., Inc.*, 593 F. App'x 871, 877 (11th Cir. 2014).

## IV.   CONCLUSION

Based on the foregoing, SEI's motion for summary judgment (doc. 24) is due to be **GRANTED**. And because that is so regardless of whether the court

29

considers the declaration of Charlie Hill, SEI's motion to strike that declaration

(doc. 34) is **MOOT**.  A separate final order will be entered.

**Dated**, this the 28th day of February, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge